UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **LYNNE CHRISTENSEN,**<br>            **Plaintiff**<br><br>**v.**<br><br>**KINGSTON SCHOOL COMMITTEE, AND GORDON L. NOSEWORTHY IN HIS PROFESSIONAL CAPACITY AS SUPERINTENDENT OF KINGSTON SCHOOLS,**<br>            **Defendants** | **CIVIL ACTION NO. 04-11773WGY** |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

**I.   INTRODUCTION**

The Defendants Kingston School Committee and Gordon L. Noseworthy in His Professional Capacity as Superintendent of Kingston Schools submit this Memorandum in Support of their Motion to Dismiss the Plaintiff's Complaint. Plaintiff's Complaint contains five (5) counts against all Defendants: Count I – Federal Due Process Violation, Count II – State Due Process Violation, Count III - §1983 Violation, Count IV – Breach of Contract and Count V – Violation of the Covenant of Good Faith and Fair Dealing.[1]

The crux of the Plaintiff's Complaint against the Defendants is that the Defendants violated Ms. Christensen's federal and state civil rights, breached a contract which Defendants had with her and violated the covenant of good faith and fair dealing when they eliminated her

---

[1] The plaintiff does not identify whether she is seeking relief on a theory of substantive or procedural due process and therefore defendants' address both theories.

position as a principal in the Kingston Public School system due to fiscal constraints and the reduction of the number of elementary school principals in Kingston from two (2) to one (1).

## II.    FACTS ALLEGED IN THE COMPLAINT[2]

The factual allegations supporting the purported cause of action against the defendants are as follows:

1.    Plaintiff Lynne Christensen was employed as a principal by the Kingston Public Schools from August 12, 2002 until June 30, 2004.  Complaint ("Comp.") ¶¶ 2, 3, 9-12.

2.    Defendant Kingston School Committee is a public employer.  *Id.* at ¶ 3.

3.    Defendant Gordon Noseworthy is the Kingston Superintendent of Schools.  *Id.* at ¶ 5.

4.    Ms. Christensen was employed as a principal in the Kingston School District pursuant to a written contract which ran from August 12, 2002 through June 30, 2005.  *Id.* at ¶¶ 9-11

5.    Ms. Christensen was informed by Superintendent Noseworthy orally and in writing on May 14, 2004 that her principal position was being eliminated due to fiscal constraints and reorganization and that she was being terminated from employment effective June 30, 2004.  *Id.* at ¶¶ 13-14, 16.

6.    Ms. Christensen's position was eliminated effective June 30, 2004.  *Id.* at ¶ 18.

7.    Ms. Christensen's Complaint does not allege that her position was eliminated for any reason other than what was stated in the May 14, 2004 letter.  *See,* Comp. generally.

8.    Ms. Christensen's Complaint does not allege that she requested a hearing to address the elimination of her position.  *See,* Comp. generally.

---

[2] Defendants admit the facts alleged in the Complaint are true for the limited purpose of their Motion to Dismiss.

9. Ms. Christensen has not alleged that she is owed any money for her past services as principal. *See,* Comp. generally.

## II. ARGUMENT

### A. Standard of Review

A Complaint should be dismissed for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Wellesley Hills Realty Trust v. Mobil Oil Corp.*, 747 F. Supp. 93, 95 (D. Mass. 1990) quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). To be sure "[t]he threshold [for stating a claim] may be low, but it is real." *The Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 16 (1st Cir. 1989), quoting *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir. 1988). Consequently, plaintiff must state "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable legal theory." *Gooley*, 851 F.2d at 515.

In deciding a motion to dismiss, and without converting the motion into one for summary judgment, a court may consider "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guaranty Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3rd Cir. 1993)(consideration given to purchase and sale agreement that was appended to motion to dismiss); *see Nappier v. Pricewaterhouse Coopers, LLP*, 227 F. Supp. 2d 263, 270 n.1 (D. N.J. 2002)(consideration given to documents referenced in plaintiff's Complaint where plaintiff's claim based in part on content of documents). This Court may consider the May 14, 2004 dismissal letter attached as *Exhibit A* without converting the instant motion into one for summary judgment. The letter is indisputably authentic. The language of the letter is integral to

Christensen's Complaint in that she specifically relied on the statements made therein.[3] The letter clearly states the reasons for the elimination of Christensen's position and should be considered in assessing the validity of the Plaintiff's claims.

Because the Complaint establishes that the Plaintiff can prove no set of facts that would entitle her to relief, this Court should dismiss all counts of the Complaint pursuant to Rule 12(b)(6).

B.  **Statutory Framework**

The issue presented in this matter is whether, under the statutory framework of Mass. Gen. Laws, Chapter 71, a superintendent may terminate a principal prior to the expiration of the principal's contract in order to adjust for budgetary constraints and administrative reorganization. Mass. Gen. Laws, Chapter 71 § 41 sets forth the method by which principals can be hired and/or fired. With respect to the terms of employment of principals, the statute provides, in pertinent part:

> . . . School principals, by whatever title their position may be known, shall not be represented in collective bargaining, but every principal shall have the opportunity to meet and discuss individually the terms and conditions of his employment in his school district with such district's superintendent and may be represented by an attorney or other representative, and shall be employed under written contracts of employment. Such contract shall be for terms of up to three years in length. . . . (emphasis added) MASS. GEN. LAWS ch. 71, § 41, ¶ 2.

With respect to the termination of a principal's employment, the statute provides:

> . . . A principal, assistant principal, department head or other supervisor who has served in that position in the public schools of the district for three consecutive years shall not be dismissed or demoted except for good cause. Only a superintendent may dismiss a principal. A principal, assistant principal, department head or other supervisor shall not be dismissed unless he has been furnished with a written notice of intent to dismiss with an explanation of the grounds for dismissal, and, if he so requests, has been given a reasonable opportunity within fifteen days after receiving such notice to review the decision

---

[3] Christensen refers to the dismissal letter throughout her Complaint, (Complaint, Introduction, ¶¶ 14 and 16), and her Complaint is based on the general allegation that she was improperly terminated.

with the superintendent at which meeting such employee may be represented by an attorney or other representative to present information pertaining to the bases for the decision and to such employee's status.  A principal, assistant principal, department head or other supervisor may seek review of a dismissal or demotion decision by filing a petition with the commissioner for arbitration. . . . (emphasis added).  MASS. GEN. LAWS ch. 71, § 41, ¶ 3.

In short, the statutory framework provides that the superintendent is responsible for hiring and firing principals.  Principals under the statute must be employed by written contracts that have a maximum term of three years.  The superintendent must notify the principal through written notice of her intent to dismiss the principal.  If a principal is notified that she is being dismissed, the principal will be given a hearing, <u>if she so requests</u>.  After the hearing, any further review of the dismissal is to proceed through arbitration.  *See* Randall & Franklin, *Municipal Law & Prac.*, 18A MASS. PRAC., ch. 22, § 890, at 146 (4th ed. Supp. 2004)(noting "[t]he Legislature envisioned two different scenarios [by which a principal's term may expire], one passive (by expiration of contract) and the other active (by dismissal or demotion).  Each alternative triggers its own district procedural safeguard: for . . . dismissal . . . arbitration [is required]").

    **C.**    **Defendants Are Entitled To Dismissal of Plaintiff's Claims For Violation Of State And Federal Substantive Due Process Rights And Violation Of 42 U.S.C. § 1983 Because She Cannot Establish A Protected Property Interest In Her Employment With The Kingston Public Schools.**[4]

To prevail on a claim for violation of federal substantive due process rights or a claim for violation of Section 1983, "a plaintiff must demonstrate a violation of an identified liberty or

---

[4] 42 U.S.C. § 1983 provides "[e]very person who, under color of any statute ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . ."  Under both a Section 1983 analysis and a substantive due process analysis, the inquiry is substantially the same: the plaintiff must demonstrate that she has been deprived of a constitutionally secured right, privilege, or immunity.  The plaintiff has failed to allege facts sufficient to establish this threshold issue.

5

property interest protected by the due process clause."[5]  *Pittsley v. Warish*, 927 F.2d 3, 6 (1st Cir. 1991)  "Not every property interest is entitled to the protection of *substantive* due process." *Coyne v. City of Somerville*, 770 F. Supp. 740, 747 (D. Mass. 1991).  "While a property interest created under state law will receive the protections of procedural due process, only those property rights derived under the Constitution receive the protections of substantive due process. *Id.* citing *Regents of University of Michigan v. Ewing*, 474 U.S. 214, 229 (1985) (Powell, J. concurring).  Only those interests that are viewed as fundamental under the Constitution are protected by the substantive due process clause.  *Id.* at 747-48.  For example, matters involving procreation, marriage, and family life may invoke the protections of the due process clause.  *Id.*; *see, e.g. Revere v. Massachusetts Gen. Hosp.,* 463 U.S. 239, 244 (1983) (state must provide medical care to persons with serious medical needs while in state custody); *Youngberg v. Romeo*, 457 U.S. 307, 315 (1982) (individual committed to a state institution has a protected liberty interest in receiving reasonably safe living conditions and freedom from unreasonable bodily restraints); *Ingraham v. Wright*, 430 U.S. 651, 673 (1977) (corporal punishment of a student inflicted by a public school teacher violates substantive due process); *Landrigan v. Warwick*, 628 F.2d 736, 741-42 (1st Cir. 1980) (substantive due process implicated where a policeman uses excessive force in the apprehension of a suspect).

"Violations of state statutes and contracts do not offend substantive due process."  *Coyne*, 770 F. Supp. at 749.  This issue was squarely addressed in *Boston Env. Sanitation Inspectors Ass'n v. Boston*, 794 F.2d 12 (1st Cir. 1986).  In *Boston Env. Sanitation Inspectors*, a city employees' union claimed the City of Boston was improperly promoting individuals on the basis of political patronage and consequently the promotions violated state statutes as well as the union

---

[5] A substantive due process violation may also occur if the state action is such that it "shocks the conscience." *Pittsley*, 927 F.2d at 6.  The defendants presume, based upon the facts alleged in her Complaint, that the plaintiff is not proceeding on the theory that the defendants' actions rise to this level.

labor contracts. *Id.* In affirming the dismissal of the plaintiff's Section 1983 action, the First Circuit found that a mere violation of state statutes and labor contracts cannot form the basis of a Section 1983 violation. *Id.* at 13. Moreover, the Court went on to say that such violations do not offend federal substantive due process. *Id.*

Similarly, in *Jimenez v. Almodovar*, 650 F.2d 363 (1st Cir. 1981), the First Circuit recognized that not every breach of contract rises to the level of a violation of substantive due process. In *Jimenez*, two university professors whose positions had been eliminated due to decreased interest in their program brought an action for violation of Section 1983 and the substantive due process clause. *Id.* at 364. The First Circuit affirmed the District Court's dismissal of these claims finding the plaintiffs failed to state a claim for relief under federal law. *Id.* at 370-71. The First Circuit held that a "mere breach of a contractual right is not a deprivation of property without constitutional due process of law . . . .Otherwise, virtually every controversy involving an alleged breach of contract by a government or governmental institution or agency or instrumentality would be a constitutional case." *Id.*

In 2001, the Appeals Court of Massachusetts specifically addressed the issue of whether a contract between a school system and principal constitutes a protected property interest and declared "[u]nder the [Chapter 71] statutory scheme, a principal serving under contract does not have a constitutionally protected property interest in his employment. *Downing v. City of Lowell*, 50 Mass. App. Ct. 779, 785 (2001) citing *Smith v. Commissioner of Mental Retardation*, 409 Mass. 545, 549 (1991); *Fontana v. Commissioner of the Metropolitan Dist. Comm'n*, 34 Mass. App. Ct. 63, 69 (1993). Absent a violation of a constitutionally protected interest, a

plaintiff cannot prevail on either a state or federal substantive due process claim or a claim for violation of § 1983.[6]

In the instant matter, the crux of Christensen's allegations is that the superintendent terminated her prior to the expiration of her contract and in violation of the terms of her contract. She asserts that the premature dismissal violated her substantive due process rights and § 1983. As discussed above, a simple breach of contract or even a violation of state statute does not give rise to a claim for relief under the Constitution or federal laws. Otherwise, as the First Circuit has warned, "virtually every controversy involving an alleged breach of contract by a government or governmental institution or agency or instrumentality would be a constitutional case." *Jimenez*, 650 F.2d at 370. If Christensen is entitled to any relief, which for the reasons addressed below the defendants deny, her only remedy is under a common law breach of contract theory.

> **D.  Plaintiff's Claim For Violation Of State And Federal Procedural Due Process Should Be Dismissed Because Plaintiff Cannot Establish That She Was Deprived Of A Protected Property Interest Without Due Process of Law.**[7]

To establish a procedural due process claim, the plaintiff must establish two elements. First, she must have a cognizable Constitutional property right or interest defined by state law. Second, the Plaintiff must demonstrate that the Defendants deprived her of that right without

---

[6] "Generally, Massachusetts applies the same standards for state substantive due process claims as those applied for a federal substantive due process analysis. *Macone v. Town of Wakefield*, C.A. No. 199902178, 2003 WL 21960670, at *3 (Sup. Ct. July 16, 2003) citing *Commonwealth v. Ellis*, 429 Mass. 362, 370-71 (1999). Although there are situations where Massachusetts courts have found that the Massachusetts Declaration of Rights provides greater substantive due process protections, the Appeals Court of Massachusetts has declared, in *Downing v. City of Lowell*, that "a principal serving under a contract does not have a constitutionally protected property interest in his employment." 50 Mass. App. Ct. at 785.

[7] The analysis of whether the Plaintiff has stated a claim in Count I – Federal Due Process (Procedural) and Count II – State Due Process (Procedural) is identical since Massachusetts courts treat state procedural due process claims the same as federal due process claims. *Macone*, C.A. No. 199902178, 2003 WL 219606707, at *3 (Super. Ct. July 16, 2003) citing *Dickerson v. Attorney General*, 396 Mass. 740, 743 (1986); *Doyle v. Department of Industrial Accidents*, 50 Mass. App. Ct. 42, 45 (2000).

adequate due process of law.  *Parratt v. Taylor*, 451 U.S. 527, 535 (1981); *Licari v. Ferruzzi*, 22 F.3d 344, 347 (1st Cir. 1994)  To determine if a procedural due process violation has occurred it is necessary to ask what process the State provided, and whether it was Constitutionally adequate."  *Licari*, 22 F.3d at 347.  Generally, if post-deprivation remedies are available, then no procedural due process violation exists.  *Id.* at 348.

As discussed herein and clearly stated in *Downing v. City of Lowell*, "a principal serving under contract does not have a constitutionally protected property interest," in her continued employment.  50 Mass. App. Ct. 785.  Therefore, the Plaintiff cannot establish the first element of a procedural due process claim and that claim should be dismissed.

Assuming *arguendo* that the Plaintiff has alleged a protected property interest, her procedural due process claim still fails because there was a post-determination procedure available to her, which she declined to utilize.  The plaintiff was provided notice of her dismissal yet she failed to request a hearing with Superintendent Noseworthy.  Section 41 clearly states that a principal who has been given notice of dismissal, <u>if she so requests</u>, will be permitted a hearing on the matter.  *See* MASS. GEN. LAWS. Ch. 71, § 41, ¶ 3.  Christensen has not alleged she requested a hearing or that such a request was denied.  If she had requested a hearing and was dissatisfied with the outcome, further review of the termination decision may have been available by filing a petition for arbitration. See *id*.  Again, Christensen has not alleged she availed herself of the process provided by the statute.  It is axiomatic that the plaintiff cannot complain of a procedural due process violation when she has "made no attempt to avail herself of existing state procedures."  *Boston Environmental Sanitation Inspectors Assoc.*, 794 F.2d at 13.  Accordingly, Count I – Federal (Procedural) Due Process and Count II – State (Procedural) Due Process should be dismissed.

9

> **E.** **Defendants Are Entitled To Dismissal of Plaintiff's Breach Of Contract Claim Because Her Three-Year Contract Term Is Unenforceable As A Matter Of Public Policy.**

The plaintiff's breach of contract claim fails because, for public policy reasons, her three (3) year contract is unenforceable. Public policy requires that job security clauses in public school employee contracts are enforceable for no more than one year. *See Boston Teachers Union, Local 66 v. School Committee of Boston*, 386 Mass. 197, 213 (1982). In *Boston Teachers Union, Local 66 v. School Committee of Boston*, the Supreme Judicial Court decided the enforceability of two provisions of a collective bargaining agreement entered into between the Boston Teachers Union, Local 66 (BTU), and the school committee of the City of Boston. *Id.* at 198. The agreement provided for salary increases over the course of three years while also providing a job security clause that was to be effective for the first two years. *Id.* On the issue of whether the salary increase provision was enforceable, the Court responded affirmatively. *Id.* at 200. On the issue of job security, however, the Court determined it was unenforceable on the basis that "public policy may limit the ability of a public employer to bind itself in a collective bargaining agreement." *Id.* at 211. The job security clause binding the school committee to guarantee employment to a teacher for more than one year was unenforceable because it prohibited the school committee from making the managerial decisions it needed to make.

Admittedly, *Boston Teachers Union, Local 66*, is distinguishable from the instant matter in that it involved a collective bargaining agreement not an employment contract. Nonetheless, the same result is applicable in this case because the public policy concerns are the same. Although Section 41 of Chapter 71 prohibits principals from entering into collective bargaining agreements, the same public policy concerns are applicable to employment contracts. In both instances, school committees must be free to exercise their managerial powers in determining how to allocate funds and how to appropriately staff in light of the available funds. *Id.* at 212. A

10

contract clause which mandates the continued employment of a principal over a three-year period effectively restrains the school committee from allocating funds in a manner that it determines to be the most advisable.

Moreover, a determination that a three-year job security clause is enforceable would negate the language in Chapter 71, § 41, which gives the superintendent the exclusive right to dismiss a principal. If principals can only be discharged at the termination of their contract term, then they can never be dismissed by a superintendent. This view negates the clear grant of authority embodied in Section 41. *See* Randall & Franklin, *Municipal Law & Prac.*, 18A MASS. PRAC., ch. 22, § 890, at 146 (4th ed. Supp. 2004)(noting "[t]he Legislature envisioned two different scenarios [by which a principal's term may expire], one passive (by expiration of contract) and the other active (by dismissal or demotion). Each alternative triggers its own district procedural safeguard: for . . . dismissal . . . arbitration [is required]"). In interpreting a statute, however, the terms should be given effect in their entirety. If, as Section 41 says, the superintendent has the authority to dismiss a principal, then the contract entered between the principal and the School Committee cannot be construed to effectively abrogate that authority.

In this case Christensen was employed as principal for nearly two years. She was dismissed from her position at the end of the 2004 school year due to budget constraints. A finding that the three-year job security clause is enforceable would prohibit the school committee from making such managerial decisions based upon fiscal limitations. Such a prohibition manifestly violates pubic policy. Additionally, enforcement of the employment term would improperly negate the superintendent's statutory power to dismiss Christensen.

> **F.   Plaintiff Fails To State A Claim For Breach Of The Implied Covenant Of Good Faith And Fair Dealing Because She Was Not An At-Will Employee And She Was Not Deprived Of Compensation For Past Services.**

In the employment context, Massachusetts courts have recognized that a claim for breach of the implied covenant of good faith and fair dealing can be found in the employment at-will contractual relationship only. *See, e.g., Fortune v. National Cash Register Co.*, 373 Mass. 96 (1977); *McCone v. New England Telephone & Telegraph Co.*, 393 Mass. 231, 234 n.6 (1984); *Gram v. Liberty Mut. Ins. Co.*, 384 Mass. 659 (1981) (*Gram I*); *Maddaloni v. Western Mass. Bus Lines, Inc.*, 386 Mass. 877 (1982); *Gram v. Liberty Mut. Ins. Co.*, 391 Mass. 333 (1984) (*Gram II*). The plaintiff in the instant matter, however, has alleged she was not an at-will employee, but rather was to be employed <u>for a term of three years</u>. In fact, all of Christensen's claims necessarily turn on the fact that she was dismissed before the expiration of her employment contract. The theory of recovery embodied in a claim for breach of the implied covenant of good faith and fair dealing, however, has evolved to address situations that arise in the <u>employment at-will</u> context. *See McCone*, 393 Mass. at n.6 (noting that theory supporting claims for breach of the implied covenant of good faith and fair dealing was developed specifically for "at-will" employment contracts). Because Christensen was not an at-will employee, the theory is not applicable and Count V should be dismissed.

Even assuming a breach of the implied covenant of good faith and fair dealing may be found in an employment contract for a specific term, it cannot be supported based upon the facts alleged by Christensen. The covenant of good faith and fair dealing is intended to temper the rigidity of the general rule that an at-will employment relationship may be terminated for any reason or for no reason at all. In Massachusetts, in each case where a breach of the covenant was found and recovery was permitted the plaintiff demonstrated that she had been deprived of a

<u>vested</u> interest in an employment benefit. *Fortune*, 373 Mass. At 102. In other words, courts have applied this theory only in situations where an employer deprives its employee of some past or future profits, <u>which the plaintiff has already earned</u>. *Id.*

*Fortune v. National Cash Register Co.*, the foremost Massachusetts authority to recognize the implied covenant of good faith and fair dealing in the employment context, involved an employer who terminated an employee just before the employee was to receive a sizeable bonus. The bonus, which the plaintiff had already earned, was to be paid for the plaintiff's efforts in selling approximately $5,000,000.00 in cash registers. *Id.* at 105. The day after the plaintiff's employer obtained the order, they terminated the plaintiff. *Id.* The court determined that "the evidence and the reasonable inference to be drawn [from the circumstances surrounding the plaintiff's termination] . . .support a jury verdict that the termination of [the plaintiff's] twenty-five years of employment . . . was motivated by a desire to pay [the plaintiff] as little of a bonus credit as it could." *Id.* Based upon the inference of improper motive, the court found a breach of the implied covenant of good faith and fair dealing.

In *Gram v. Liberty Mut. Ins. Co.*, 384 Mass. 659 (1981) (*Gram I*), the Supreme Judicial Court of Massachusetts held that the plaintiff's employer, Liberty Mutual Insurance Company, would be held liable for breach of the covenant of good faith and fair dealing if it terminated the plaintiff without paying the plaintiff commissions which it had already earned, but which were not yet due. 384 Mass. 659, 671 (1981). The *Gram* Court explained that "the obligation of good faith and fair dealing imposed on an employer requires an employer to be liable for the loss of compensation that is so clearly related to an employee's past service, when the employee is discharged without good cause." *Id.* at 672. The distinction is clear: an employee who is discharged without cause is entitled to recover for future compensation only if the compensation sought is for <u>past services</u> not future services. *Id.*

13

In this case, even after construing the facts alleged in the Plaintiff's Complaint in the light most favorable to the Plaintiff, her claim for breach of the implied covenant of good faith and fair dealing must fail. The Plaintiff alleges that on May 14, 2004 she received a letter from the Superintendent stating that her position was being terminated effective June 30, 2004. The letter indicated the Plaintiff was being dismissed due to fiscal constraints and reorganization of administration of the Kingston Elementary Schools, which required that the number of principalships be reduced to one. *See Exhibit A*. The Plaintiff does not contend that her position was terminated for any reason other than what was stated in the May 14 letter. Nor does the Plaintiff claim she is owed compensation for her past services. Thus, even assuming a claim for breach of the implied covenant of good faith and fair dealing may apply to an employment contract for a specific term, the Plaintiff has not alleged the basic facts needed to support her claim: that she was terminated without good cause and that she was terminated so that her employer could avoid paying her for services she had already performed. Count V of Christensen's Complaint should be dismissed accordingly.

## IV.     CONCLUSION

Even when viewed in the light most favorable to the Plaintiff, the allegations set forth in the Plaintiff's Complaint fail to set forth any cognizable theory of recovery and the Complaint should be dismissed in its entirety in accordance with Fed. R. Civ. P. 12(b)(6). Further, in the event this Court finds that the Plaintiff's state claims survive a Rule 12(b)(6) motion to dismiss and the federal claims do not, Defendants request this Court decline to exercise its pendent jurisdiction and dismiss the remaining common law claims under Rule 12(b)(1) for lack of subject matter jurisdiction. *See Copeland v. Hill*, 680 F. Supp. 466, 469 (D. Mass. 1988) (declining to exercise pendent jurisdiction over state law claims and dismissing same for lack of subject matter jurisdiction after federal claims summarily dismissed).

WHEREFORE, Defendants respectfully request this Honorable Court dismiss the Plaintiff's Complaint in its entirety for failure to state a claim under Fed. R. Civ. P. 12(b)(6) or, alternatively, dismiss the Complaint in part as appropriate under Fed. R. Civ. P. 12(b)(6) and the remaining Counts, if any, under Rule 12(b)(1).

        Kingston School Committee, and Gordon L. Noseworthy in His Professional Capacity as Superintendent of Kingston Schools
By their attorneys,

For Defendants,

/s/ Rebecca J. Wilson
_____
Rebecca J. Wilson, BBO #529980
Jennifer L. Markowski, BBO #655927
*Peabody & Arnold, LLP*
30 Rowes Wharf
Boston, MA 02110
(617) 951-2100