UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MASSACHUSETTS

*******************************************

LYNNE CHRISTENSEN
    Plaintiff

                                                   Civil Action No. 04-11773-WGY
v.

KINGSTON SCHOOL COMMITTEE, AND
GORDON L. NOSEWORTHY IN HIS PROFESSIONAL
CAPACITY AS SUPERINTENDENT
OF KINGSTON SCHOOLS,
    Defendants
*******************************************

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DIMSISS

### Introduction

In this action for damages, equitable, declaratory and injunctive relief arising under the United States Constitution, federal statutes, the Massachusetts Constitution, Massachusetts statutes, and Massachusetts common law brought on behalf of Lynne Christensen, Defendants have asked this Court to dismiss all claims under F.R.C.P. 12(b)(6) and (1). Plaintiff Christensen opposes this Motion on the grounds specified below and requests a hearing on this Motion.

### A. Standard of Review

In order to prevail on a Motion to Dismiss all factual allegations contained in the Complaint are assumed true. Coyne v. City of Somerville, 770 F. Supp 740, 741 (D.

1

Mass. 1991). Averments and inferences arising from the factual allegations contained in the Complaint should be read in favor of the Plaintiff. Coyne v. City of Somerville, at 741. "Dismissal is warranted only if 'it appears beyond doubt that the Plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief.'" Id., quoting Conley v. Gibson, 355 U.S. 41, 45-6 (1957). Plaintiff Christensen has made all necessary factual allegations in her Complaint to withstand a Motion to Dismiss.

Plaintiff Christensen has alleged: she was employed by a public employer (Complaint at ¶2)[1]; she was first employed as Principal by Defendant in 2002 (C. at ¶9); she had a contract for three years, from 2002 through 2005 (C. at ¶10); Defendants terminated her before her contract expired (C. at 11, 13, 14); she was not provided a pre-decision opportunity for a hearing (C. at 23); she was not provided a post-decision opportunity for a hearing (C. at ¶24); her contract contained no provision allowing for early termination by the Defendants for fiscal concerns and/or reorganization (C. at ¶19, 20, 21), and; as a principal with less than three years of service in the school district she is expressly excluded from the statutory hearing and arbitration provisions of Massachusetts General Laws chapter 71, §§41 and 42 (C. at ¶22).

All of these factual allegations, again, which must be taken as true, support dismissal of Defendants' Motion.

B. Plaintiff Has Pled A Protected Property Interest In Continued Employment.[2]

---

[1] All references to the Complaint will be denoted as "C. at...."
[2] As it is necessary to establish a "property interest" for both a substantive due process violation and procedural due process violation, and as Defendants have exclusively

Indeed, Plaintiff Christensen meets the higher standard for summary judgment. "To avoid summary judgment on a procedural due process claim, [Plaintiff] must show (1) that [she] had a property interest defined by state law; and (2) that defendants, acting under color of state law, deprived [her] of that interest without adequate process." Licari v. Ferruzzi, 22 F.3d 344, 347 (1st Cir. 1994). Plaintiff's Complaint contains sufficient factual allegations to meet this standard.

Property interests are "created and their dimensions defined by existing rules or understandings that stem from an independent source such as state law...." Board of Regents v. Roth, 564 U.S. 577 (1972). Massachusetts state law mandates that principals have employment contracts. MGL c. 71, §41. A principal's contract may be up to, but not exceed, three years. In August 2002 Lynne Christensen and the Superintendent of Kingston Schools, Gordon Noseworthy, executed a three year contract employing Lynne Christensen as Principal. (C. at ¶9, 10, 11). The contract term ran from August 12, 2002 through June 30, 2005. (C. at ¶11). The Defendant Kingston School Committee is a public employer. (C. at ¶3). Gordon Noseworthy is the Superintendent of Schools for Kingston, Massachusetts. (C. at ¶4).

Succinctly put by District Judge Tauro in Coyne v. City of Somerville, the question is "whether [Christensen] has stated an actionable §1983 claim relating to [her] due process rights turns on ... [w]hether [she] had a legitimate expectation" that her contract with her public employer would be honored. Id. at 746. Christensen had a three-year contract term, running from August 12, 2002 through June 30, 2005. She was

---

argued that plaintiff's due process claims must fail because of a purported lack of a "protectable property interest," Plaintiff will address the "property interest" prong of procedural due process violations explicitly and let that argument suffice for the substantive due process violation.

3

terminated from her position a year before the contract term expired. She was terminated owing to "fiscal restraints and reorganization." (Defendants' Motion- attachment). There was no provision in the parties' written contract that provided for early termination of the contract owing to such occurrences. (C. at ¶19, 20, 21). Christensen had a reasonable expectation that her employment with her public employer would continue throughout the contractually agreed to term. In sum, she had a protected property interest in her continued employment with her public employer.

The second inquiry is what process was due and whether, if given, it was constitutionally adequate. Licari v. Ferruzzi, at 347. "'This inquiry would examine the statutory or administrative procedure ... effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort law.'" Id., quoting Zinermon v. Burch, 494 U.S. 113, 126 (1990). As Christensen has not "served in that position [principal] in the public schools of the district for three consecutive years" the hearing and arbitration provisions of Massachusetts General Law chapter 71, §§41 and 42 are inapplicable to her. MGL c. 71, §§41, 42. (C. at 6, 7, 8, 22). Further, the contract did not require either party to seek administrative remedies or arbitration. (C. at ¶8).

The safeguards applicable to Christensen as a public employee, at a minimum, were Loudermill type protections. Cleveland Board of Education v. Loudermill, 470 U.S. 532 (1985). In Loudermill the Supreme Court articulated a constitutional minimum for what procedures satisfy Fourteenth Amendment due process when a state attempts to terminate an employee with a protectable property interest. Loudermill stated that "minimum [procedural] requirements [are] a matter of federal law, they are not diminished by the fact that the State may have specified its own procedures that it may

4

deem adequate for determining preconditions to adverse official action." Id at 541, quoting Vitek v. Jones, 445 U.S. 480, 491 (1980) (internal quotes omitted.)

The Fourteenth Amendment's due process requirements for deprivation of a property interest are usually satisfied if there is sufficient substantive and procedural notice to the affected individual and meaningful pre-and/or post-decision hearings. "We assess the adequacy of procedures by balancing the government's interest against the private interest affected by the action, the risk of erroneous deprivation, and the value of additional safeguards." Id. Here, no substantive and/or procedural notice was given to Christensen; nor was she afforded a hearing of any kind. (C. at ¶ 23, 24, 26, 27). Instead, on or about May 14, 2004, she was informed she was terminated effective June 30, 2004. (C. at ¶14).

In finding that a pre-termination notice and hearing was mandated under due process, in conjunction with a post-termination hearing, the Loudermill Court put great emphasis on a state depriving an individual of her livelihood. In this difficult calculus, the Court distinguished between merely adverse job actions, such as demotion and suspension, and termination, which cuts off a person's livelihood. The greater the potential harm wrought by the state action, the greater the first line of protections must be. "First, the significance of the private interest in retaining employment cannot be gainsaid. We have frequently recognized the severity of depriving a person of the means of livelihood." Id. Here, Christensen was not given notice or a hearing prior to, or following, the decision to terminate her. (C. at ¶26, 27). Again, instead, on or about May 14, 2004, she was informed she was terminated effective June 30, 2004.

In short, although Defendants proffer some interesting readings of relevant case law (which will be dealt with below), it is pellucidly clear Ms. Christensen has pled a protectable property interest in her continued employment pursuant to a written three year contract with a public employer and that that contract was breached in a manner violative of due process and §1983.

Defendants insist Ms. Christensen has no "protected property interest" and thus cannot prevail on her due process claims and her §1983 claims. They offer in support of this contention a single case, Downing v. City of Lowell, which in no manner stands for the proposition they say it does. 50 Mass. App. Ct. 779 (2001).

Defendants contend that Downing v. City of Lowell, stands for the proposition that under M.G.L. c. 71 "a principal serving under contract does not have constitutionally protected property interest in his employment." (Defendants' Motion pg. 7, quoting Downing v. City of Lowell, 50 Mass. App. Ct. 779, 785 (2001) (internal citations omitted)). In Downing a principal who had a three year contract was non-renewed for another contract at the agreed upon expiration of the initial contract. The Appeals Court was noting in the above quoted language that the Principal did not have a protectable property interest *beyond* the life of the contract. The Appeals Court was very clear in outlining that principals whose contracts had expired or been non-renewed were individuals who had no protectable property interest. Contrariwise, "a principal under a one-year, or even three-year, contract is guaranteed protection in the event of dismissal only when a superintendent seeks to terminate the employment relationship *prior to the expiration of the contractual period.*" Downing at 471 (emphasis added.) Clearly Defendants tried to terminate Ms. Christensen's contract "prior to the expiration of the

6

contractual period" and thus she is guaranteed protection and maintains her protectable property interest in continued employment for the duration of the contract. Downing supports Ms. Christensen's contentions.

The other two similar cases Defendants cite are similarly unavailing. Plaintiffs in both Smith v. Commissioner of Mental Retardation and Fontana v. Commissioner of the MDC, were probationary/provisional employees. 409 Mass. 545 (1991) and 34 Mass. App. Ct. 63 (1993) respectively. They had no reasonable expectation of continued employment because by the very nature of their positions, probationary and provisional, they were temporary, impermanent, without even a semblance of a guarantee for continued employment. Unlike Ms. Christensen who has a three-year contract, those plaintiffs could not reasonably expect continued employment and that is why their claims failed.

The second line of argument offered by Defendants is that mere violations of state statutes or breaches of contract do not offend due process or §1983. Defendants' Motion *passim*. That is, of course, true, if the state actor comports its behavior with the norms required by the state declaration of rights and federal constitution. It is the same as saying a mere arrest does not offend constitutional principles, which is of course true, unless there was no probable cause, or a warrant was improperly issued or executed, or excessive force was used, etc.... It is a simple declamation that is only sustained if the facts are similarly simple. Here, however, Defendants have not merely breached the contract- they have eschewed the bare minimum requirements of due process while doing so. Defendants' case law does nothing to vitiate that.

7

Defendants also cite <u>Jimenez v. Almodovar</u>, for the same proposition, but that argument suffers the same infirmities as those noted above, namely, if the breach occurs while the state actor adheres to the requisite due process, it won't give rise to a federal claim, but if they don't, it will. <u>Jimenez v. Almodovar</u>, 650 F.2d 363 (1st Cir. 1981). In <u>Jimenez</u> the plaintiffs were given pre-deprivation hearings and an opportunity to appeal administratively. Ms. Christensen was afforded no such process. As such <u>Jimenez</u> is factually and legally inapplicable.

In <u>Boston Env. Sanitation Inspectors Ass'n v. Boston</u>, the Appeals Court upheld the District Court's dismissal of Plaintiff's due process claims where the Plaintiffs, a union and its president, refused to use any of the myriad state and administrative procedures to remedy their contract claims. <u>Boston Env. Sanitation Inspectors Ass'n v. Boston</u>, 794 F.2d 12, 13 (1st Cir. 1986). To wit, the District Court found plaintiffs did not avail themselves of the "Massachusetts Labor Relations Commission procedures, a state court action, or a state court mandamus petition or of contractual grievance procedures." <u>Id</u>. "We agree with the district court that appellants cannot complain of a violation of procedural due process rights when appellants have made no attempt to avail themselves of existing state procedures." <u>Id</u>. The Court went on to note that "[m]ere violation of state statutory requirements does not offend federal constitutional due process." <u>Id</u>.

Although Defendants press these two points, neither has application in the present case. First, Ms. Christensen, as alleged in the Complaint, does not have any administrative or exclusive state court remedies she needs to exhaust before bringing this action. Defendants are either willfully or inadvertently misapplying M.G.L. c. 71, §41,

when they maintain Ms. Christensen had a right to request a hearing and then, if not satisfied, could appeal to the Department of Education for arbitration. Defendants' Motion pg. 9. In Massachusetts's public sector education law under §41, only principals who have "served in that position in the public schools of the district for three consecutive years" have the right to such hearings and appeals. M.G.L. c. 71, §41. Ms. Christensen has no administrative remedies because she has less than three years with her employer. What she has are constitutional guarantees and contract rights- neither of which were honored.

Without the constitutional minimum of notice and a hearing, Ms. Christensen was terminated. Without the constitutional minimum of notice and a hearing, Ms. Christensen was informed by letter dated May 14, 2004 that Superintendent Noseworthy had decided to eliminate her principalship, effective June 30, 2004.

Plaintiff Lynne Christensen has alleged facts sufficient to support her claim of a protected property interest in her continued employment, and that her public employer, without due process, deprived her of that interest. That is all that is necessary for her to prevail in this Opposition to Defendants' Motion to Dismiss. Accordingly she asks the Court to allow her Motion in Opposition.

    C. M.G.L. c. 71, §41 Embodies The Clearest Expression of Public Policy Concerning What Job Security Rights Principals May Achieve.

The clearest and best expression of Massachusetts public policy concerning what job security contract rights apply to principals is found in M.G.L. c. 71, §41. There the legislature unambiguously mandated that 1) principals shall not have collective bargaining rights, 2) principals shall be employed pursuant to a written contract, and 3)

9

such contract may be from one to three years in duration. M.G.L. c. 71, §41. The legislature has expressly declared that the best public policy for professional educators is that they be employed with written contracts for up to three years. It is unambiguous, it is simple, it is clear.

Plaintiff will summarily address Defendants' contention that somehow <u>Boston Teachers Union v. School Committee of Boston</u> changes this public policy calculus. First, <u>Boston Teachers Union</u> was decided almost 11 years prior to the passage of the current version of M.G.L. c.71§41, the statute at issue in this case. While we do not impute omniscience onto the legislature, we do acknowledge they operate against a backdrop of recognized case law, <u>Boston Teachers Union</u> being one such case. If the legislature had felt the public policy considerations expressed in that case were serious, it would have incorporated such changes into chapter 71 to make it consistent with that decision. Instead, 10 years later, as the legislature decided to fundamentally change the educational structure in Massachusetts, it simultaneously decided not to incorporate the <u>Boston Teachers Union</u> holding, at least as to principals, superintendents, and athletic coaches. Rather than limit principals to one-year appointments, with no job security beyond that term, the legislature specifically provided for employment contracts for principals of up to three years in duration.[3] That, in and of itself, makes <u>Boston Teachers Union</u> inapposite.

---

[3] The legislature similarly provided for up to six-year contracts for superintendents and up to three-year contracts for athletic coaches. Non-renewal of those contracts at their expiration date was deemed sufficient protection of the public interest. <u>School Committee of Natick v. Educ. Ass'n of Natick</u>, 423 Mass 34, 37-38 (1996). A fixed term of appointment could be terminated only at the expiration of the employment contract. <u>ID</u>.

Also dispositive is the fact that <u>Boston Teachers Union</u> is wholly inapplicable to the present case. First, that case dealt with teachers who, after the passage of the education reform Act of 1993, are afforded a panoply of rights different from principals. While principals are debarred from collective bargaining and cannot acquire unlimited job security like teachers, they are treated more favorably when it comes to protection from lay-offs. Principals are specifically excluded from the application of the last paragraph of G.L. c. 71, § 42, to wit, the provision that permits the layoff of teachers with tenure due to reductions in force or reorganization.[4]

Second, there were collective bargaining agreements and unions, not individual employment contracts, involved in the <u>Boston Teachers Union</u>. Indeed, the motivation for the job security discussion in the <u>BTU</u> opinion was the Court's recognition that collective bargaining agreements were a different kind of contractual animal. *Viz*, "It is now well established in this State that public policy may limit the ability of a public employer to bind itself in a collective bargaining agreement. This gloss on public sector collective bargaining statutes is deemed necessary in order that the collective action of public employees do not distort the normal political process for controlling public policy." Id. at 211. (Internal cites omitted.) It could not be clearer that the limitation on the public employer to contract for employment terms longer than a year is out of the ordinary (i.e. a "gloss" on what is otherwise expected) and thus limited to contracts that are negotiated pursuant to the public sector collective bargaining statutes.[5] In short, the

---

[4] G.L. c. 71, § 42 by its terms provides that this provision of § 42 "shall not apply to school principals."
[5] M.G.L c. 150E.

public policy concerns underlying <u>Boston Teachers Union</u> are not consilient, concentric, or concatenated.

What is dispositive, is the plain language of the statute. The statute mandates individual employment contracts, and allows them for terms up to three years. The legislature has clearly enunciated what the public policy should be with regard to principals.

### D. Plaintiff Has Sufficiently Pled A Claim for Breach of the Covenant of Good Faith and Fair Dealing.

Defendants assert that the covenant of good faith and fair dealing can "be found in the employment at-will contractual relationship only." Defendants' Motion pgs. 12, 13. They argue that as Ms. Christensen had a contract, "[she] was not an at-will employee" and therefore, "the theory is inapplicable" to her. Defendants' Motion pg. 12. That is patently wrong under Massachusetts law.

"Indeed, the rule is clear in Massachusetts that every contract is subject to an implied covenant of good faith and fair dealing." <u>Anthony's Pier Four, Inc., v. HBC Associates</u>, 411 Mass. 451, 473 (1991). "The implied covenant of good faith and fair dealing provides that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." <u>Anthony's Pier Four</u> at 471 (internal citations omitted). The SJC in <u>Anthony's Pier Four</u> found the covenant applicable to the breach of a written development contract, not an implied contract, not an at-will employment contract, but a written contract with specific terms, just like the case here.

12

Defendants further argue, based exclusively on at-will employment cases, that even if the covenant applies, Ms. Christensen cannot prevail because she has not been deprived of some past or future profits that she has already earned. Defendants' Motion pg. 12, e.g., Fortune v. National Cash Register, 373 Mass. 96 (1977); McCone v. New England Telephone & Telegraph Co., 393 Mass. 231 (1984); Gram v. Liberty Mutual Insurance Co., 391 Mass. 333 (1984). Again, that is not the law in Massachusetts. As noted above, "anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract" may be actionable, not just lost commissions in at-will employment cases. Anthony's Pier Four at 417.

Defendants' assertions regarding this Count are without merit and should be dismissed.

## CONCLUSION

As Plaintiff Lynne Christensen has alleged 1) a protected property interest in continued employment pursuant to a written three year contract with a public employer, 2) that property interest was stripped away from her without due process when she was summarily terminated before the contract expired, 3) and that Defendants have violated Massachusetts contract law and the covenant of good faith and fair dealing, she urges this Court to deny Defendants' Motion to Dismiss.

                                       Respectfully submitted for Lynne Christensen,
                                       By her attorneys,

                                       Terence P. Noonan   BBO#648712
                                       Kathryn M. Noonan   BBO#373340
                                       Law Office of Kathryn M. Noonan
                                       1150 Walnut Street
                                       Newton, MA. 02461
                                       (617) 969-4518

Dated: October 18, 2004

### CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail/hand on 10/18/04