UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LYNNE CHRISTENSEN,<br><br>          Plaintiff,<br><br>          v.<br><br>KINGSTON SCHOOL COMMITTEE;<br>GORDON L. NOSEWORTHY, In His<br>Professional Capacity as<br>Superintendent of<br>Kingston Schools,<br><br>          Defendants. | CIVIL ACTION<br>NO. 04-11773-WGY |

MEMORANDUM AND ORDER

YOUNG, C.J.                                    March 8, 2005

## I.    INTRODUCTION

The plaintiff Lynne Christensen ("Christensen") filed a complaint on August 13, 2004, against the defendants Kingston School Committee ("the Committee") and Gordon L. Noseworthy ("Noseworthy"), in his Professional Capacity as the Superintendent of the Kingston Schools (the Committee and Noseworthy, together, "Kingston").  Christensen is seeking damages and equitable, declaratory, and injunctive relief for violations of (1) her federal procedural and substantive due process rights, (2) her state procedural and substantive due process rights, and (3) 42 U.S.C. section 1983, as well as for breaches of (4) contract and (5) the implied covenant of good

faith and fair dealing.  Kingston moved to dismiss.  The Court heard the parties' oral arguments on November 16, 2004, and took the matter under advisement.

## II.  Facts

There are no real factual disputes in this case.  In August 2002, Christensen and Kingston entered into a three-year contract, signed by Noseworthy on behalf of the Committee, that employed Christensen as a school principal.  Compl. of Lynne Christensen [Doc. No. 1] ("Pl.'s Compl.") at 1, 3.  The term of the contract ran from August 12, 2002, through June 30, 2005. Pl.'s Compl. at 1, 3 ¶ 10.  The contract provided that Christensen would receive a salary of $77,000 for the first year, $80,080 for the second year, and $83,283 for the third and final year of the contract.  Pl.'s Compl. at 3 ¶ 11.  She was also entitled other benefits, namely "health insurance, life insurance, sick leave, bereavement leave, personal business, workers compensation coverage, course reimbursement, vacation, and retirement benefits."  Pl.'s Compl. at 3 ¶ 12.  The precise terms of the contract's termination provisions are not clear on the record before this Court on this motion to dismiss.

Christensen was informed, both verbally and in a letter dated May 14, 2004, that Noseworthy had eliminated her principal position, one of two existing principal positions in the district, and that, as a result, she would be terminated

2

effective June 30, 2004.  Pl.'s Compl. at 1, 3 ¶¶ 14-15, 4 ¶ 18;
Defs.' Mem. in Supp. of Mot. to Dismiss [Doc. No. 7] ("Defs.'
Mem.") at 2 ¶ 5.  Noseworthy stated that the elimination of the
position was "due to fiscal constraints and reorganization of
administration of the elementary schools in Kingston."  Pl.'s
Compl. at 3 ¶ 16.  Christensen has not challenged Noseworthy's
reasons for terminating the position and dismissing her.
Kingston correctly indicates that "Ms. Christensen's Complaint
does not allege that her position was eliminated for any reason
other than what was stated in the May 14, 2004, letter" nor does
she "allege that she requested a hearing to address the
elimination of her position."  Defs.' Mem. at 2 ¶¶ 7-8.
Christensen accepts these reasons for her termination, it
appears, when she states in her complaint that her contract did
not allow Kingston to terminate her due to "fiscal constraints
and reorganization of administration of the elementary schools in
Kingston."  Pl.'s Compl. at 3 ¶ 16, 4 ¶¶ 20-21.

## III. DISCUSSION

### A.   Standard of Review

#### 1.   Motion to Dismiss

This Court has jurisdiction pursuant to the United States
Constitution, 42 U.S.C. section 1983, and 28 U.S.C. sections
1331, 1343, and 1367.  This Court assumes all factual allegations
in Christensen's Complaint to be true and grants all inferences

to Christensen when considering Kingston's Motion to Dismiss.
Coyne v. City of Somerville, 770 F. Supp. 740, 743 (D. Mass.
1991) (Cohen, M.J.), aff'd 972 F.2d 440 (1st Cir. 1992) ("The
averments of the complaint, as well as the proper inferences
arising from them, [are] liberally construed in favor of the
plaintiff."). "[A] complaint should not be dismissed for failure
to state a claim unless it appears beyond doubt that
[Christensen] can prove no set of facts in support of [her] claim
which would entitle [her] to relief." Conley v. Gibson, 355 U.S.
41, 45-46 (1957) (original alterations omitted) (alterations
added); Fed. R. Civ. P. 12(b)(6).  Christensen must put forth
"factual allegations, either direct or inferential, respecting
each material element necessary to sustain recovery under some
actionable legal theory."  Gooley v. Mobil Oil Corp., 851 F.2d
513, 515 (1st Cir. 1988).

         2.   **Inclusion of Exhibit to the Motion to Dismiss**

     Kingston defends its inclusion of the notice of termination
as an exhibit to its motion to dismiss and contends that this
Court, in making its decision, may consider "an undisputedly
authentic document that [Kingston] attaches as an exhibit to a
motion to dismiss if [Christensen's] claims are based on the
document." Pension Benefit Guar. Corp. v. White Consol. Indus.,
Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).  Kingston contends that
the dismissal letter attached to the motion may be considered by

this Court "without converting the instant motion into one for summary judgment" because the letter is "authentic" and Christensen specifically relies on statements from the letter in her complaint. Defs.' Mem. at 3-4.

This Court agrees. In re Computervision Corp. Sec. Litig., 869 F. Supp. 56, 59-60 (D. Mass. 1994) (quoting Romani v. Shearson Lehman Hutton, 929 F.2d 875, 879 n.3 (1st Cir. 1991) ("Although plaintiff did not attach a copy of the offering materials to his complaint, defendants submitted the documents with their motion[] to dismiss. This step was proper and did not convert the motion to dismiss into a motion for summary judgment.")); Fudge v. Penthouse Int'l, Ltd., 840 F.2d 1012, 1015 (1st Cir. 1988) (stating that "when [a] plaintiff fails to introduce a pertinent document as part of his pleading, [a] defendant may introduce the exhibit as part of his motion attacking the pleading.") (citations and internal quotation marks omitted); LoCicero v. Leslie, 948 F. Supp. 10, 12 (D. Mass. 1996) (explaining, when considering the inclusion of a public transcript, that "[d]espite the parties' arguments, it is not necessary for this Court to convert the motion to dismiss to a motion for summary judgment"); Branch v. Federal Deposit Ins. Corp., 825 F. Supp. 384, 398 n.8 (D. Mass. 1993) (explaining that "it is well established that a district court may take judicial notice of . . . indisputably authentic documents on a 12(b)

motion without converting even a 12(b)(6) motion into one for summary judgment.").

    **B.   Christensen's Federal and State Due Process[1] and 42 U.S.C. § 1983 Claims**

          **1.   Does Christensen have a Protectable Property Interest such as would Warrant Constitutional Due Process Protections and Rights under 42 U.S.C. § 1983?**

"[A] plaintiff must demonstrate a violation of an <u>identified</u>

---

   [1] It should be observed at the outset that, as a general proposition, the federal and Massachusetts standards for a procedural due process analysis are identical. <u>Liability Investigative Fund Effort, Inc.</u> v. <u>Massachusetts Med. Prof. Ins. Assn.</u>, 418 Mass. 436, 443 (1994) ("We observe preliminarily that we have treated the procedural due process protections of the Massachusetts and United States Constitutions identically."); <u>School Comm. of Hatfield</u> v. <u>Board of Educ.</u>, 372 Mass. 513, 515 n.2 (1977) ("The protection afforded property interests by both [federal and Massachusetts due process] provisions is subject to the same analysis."); <u>Doyle</u> v. <u>Department of Indus. Accidents</u>, 50 Mass. App. Ct. 42, 45 (2000) (noting, in a due process context, that "the procedural protections" of the federal constitution and the Massachusetts Declaration of Rights "are co-extensive"). <u>Cf. Dickerson</u> v. <u>Attorney Gen.</u>, 396 Mass. 740, 743 (1986) (noting in equal protection context that the "standard of review under the cognate provisions of the Massachusetts Declaration of Rights is the same as under the Fourteenth Amendment to the Federal Constitution."). Accordingly, in evaluating Christensen's federal procedural due process claims, this Court inherently reviews her state procedural due process claims.

   In the context of substantive due process, the Massachusetts Declaration of Rights at times provides greater substantive due process protections. <u>Macone</u> v. <u>Town of Wakefield</u>, 16 Mass. L. Rep. 506, 2003 WL 21960670, *3 (Mass. Super. Ct. Jul 16, 2003) (Houston, J.) ("[T]here are situations where Massachusetts courts have found that the Massachusetts Declaration of Rights provides greater substantive due process protections . . . ."). As in <u>Macone</u>, Christensen has not argued "that the Massachusetts Declaration of Rights provides greater substantive due process protections in this context." <u>Id.</u> Accordingly, this Court treats the federal and state claims identically.

liberty or <u>property interest protected</u> by the due process clause"
to find a violation of due process. <u>Coyne</u>, 770 F. Supp. at 746
n.13 (emphasis added). See <u>Cleveland Bd. of Educ.</u> v. <u>Loudermill</u>,
470 U.S. 532, 538 (1985) (noting that a "federal constitutional
claim" depended on the existence of "a property right in
continued employment"); <u>Pittsley</u> v. <u>Warish</u>, 927 F.2d 3, 6 (1st
Cir. 1991) (summarizing the two theories of due process in a case
involving section 1983 and due process claims against police
officer for events transpiring during an arrest). In order for
Christensen's due process claims and, in turn, her section 1983
claim to survive, this Court must determine that she had the
requisite "protectable property interest."

        "For an interest in a statutorily created benefit to become
a protected property interest under the Fourteenth Amendment, a
person 'must have more than a unilateral expectation of it. He
must, instead, have a legitimate claim of entitlement to it.'"
<u>Coyne</u> v. <u>City of Somerville</u>, 972 F.2d 440, 443 (1st Cir. 1992)
(quoting <u>Board of Regents</u> v. <u>Roth</u>, 408 U.S. 564, 577 (1972));
<u>Hoffman</u> v. <u>City of Warwick</u>, 909 F.2d 608, 619 (1st Cir. 1990)
(same); <u>Smith</u> v. <u>Commissioner of Mental Retardation</u>, 409 Mass.
545, 548-49 (1991) (quoting <u>Roth</u>, 408 U.S. at 576-77, and noting
that "a person clearly must have more than an abstract need or
desire" for rights to arise).

        The First Circuit did state in <u>Coyne</u> that the decisions of

the circuit do "not rule out the possibility of a regulatory
scheme creating a 'legitimate claim of entitlement'" to, in that
case, a promotion.  <u>Coyne</u>, 972 F.2d at 443.  Comparably,
Christensen argues that she "had a reasonable expectation that
her employment with her public employer would continue throughout
the contractually agreed to term" and concludes "she had a
protected property interest in her continued employment with her
public employer."  Pl.'s Opp'n to Defs.' Mot. to Dismiss [Doc.
No. 9] ("Pl.'s Opp'n") at 4.  Christensen also relies on the
decision of the Supreme Court in <u>Loudermill</u>, 470 U.S. 532 (1985),
where the Supreme Court, quoting its decision in <u>Roth</u>, 470 U.S.
at 577, again explained that property interests "are created . .
. by existing rules that stem from an independent source such as
state law."  470 U.S. at 538.

The Supreme Court in <u>Loudermill</u> emphasized important, august
truths which unquestionably resonate with this Court: "the
significance of the private interest in retaining employment
cannot be gainsaid," 470 U.S. at 543, "depriving a person of the
means of livelihood," is "sever[e]," <u>id.</u>, "[a] governmental
employer . . . has an interest in keeping citizens usefully
employed rather than . . . forcing its employees onto the welfare
rolls," <u>id.</u> at 544, and

> the disruption caused by a loss of wages may be . . . devastating
> to an employee . . . Absent an interim source of wages, the
> employee might be unable to meet his basic, fixed costs, such as
> food, rent or mortgage payments . . . . A child's education may
> be interrupted, a family's home lost, a person's relationship

8

with his friends or even his family may be irrevocably affected.
Id. at 549-550 (Marshall, J. concurring) (contemplating in that
case the potential consequences of the passage of a considerable
amount of time between the termination of employment and a post-
termination hearing and decision).

The Supreme Court held that a protected property right
existed in Loudermill.  Yet, Loudermill is readily
distinguishable from this matter.  The Ohio Statute[2] specifically
provided that civil servants like Loudermill and Donnelly,[3] could
not be removed from employment except for cause.  As such, as per
the statute, Loudermill and Donnelly, civil servants who could
only be fired for cause, possessed property rights.  Loudermill,
470 U.S. at 539 (explaining that the Ohio statute "plainly
supports the conclusion" that the civil service employees
"possessed property rights in continued employment" and noting

---

[2] The Ohio statute considered in Loudermill provided that a
civil service employee could only be dismissed due to a transfer
or reassignment, or "for incompetency, inefficiency, dishonesty,
drunkenness, immoral conduct, insubordination, discourteous
treatment of the public, neglect of duty, violation of such
sections or the rules of the director of administrative services
or the commission, or any other failure of good behavior, or any
other acts of misfeasance, malfeasance, or nonfeasance in office,
or conviction of a felony."  Ohio Rev. Code Ann. § 124.34 (cited
in part in Loudermill, 470 U.S. at 538-539 n.4).

[3] Donnelly originally filed a separate action in district
court.  The cases were consolidated for appeal before the Court
of Appeals for the Sixth Circuit, which reversed in part and
remanded the decision of the District Court.  The Supreme Court
affirmed the decision of the Sixth Circuit.  See Loudermill, 470
U.S. at 537.

that the question of the existence of a property right was not raised in the district or circuit courts).  Here, Christensen had only been employed for two years and was not protected by the statutory "for good cause" safeguard of the Massachusetts statute.  Mass. Gen. Laws ch. 71, § 41.  Further, in <u>Loudermill</u>, the civil service employees, unlike Christensen, took advantage of the administrative appeals process afforded by law.  470 U.S. at 535.

Most on point is the decision of the Appeals Court of Massachusetts in <u>Downing</u> v. <u>City of Lowell</u>, where the court specifically decided that the due process claims of a principal who has served for more than three consecutive years were without merit as "a <u>principal</u> serving under contract <u>does not have a constitutionally protected property interest in his employment</u>."  50 Mass. App. Ct. 779, 785 (2001) (emphasis added) (involving a principal who, unlike Christensen, was tenured, and examining the difference between a dismissal and a failure to renew an employment contract).  <u>See</u> <u>Fontana</u> v. <u>Commissioner of the Metro. Dist. Comm'n</u>, 34 Mass. App. Ct. 63, 69 (1993) (holding that a probationary employee does not have a protected property interest); <u>Smith</u>, 409 Mass. at 549 (concluding that, in a case involving a temporary supervisor, that no protected property interest existed).

Christensen attempts to use language in <u>Downing</u> to receive

protections because Noseworthy attempted to "terminate the
employment relationship prior to the expiration of the
contractual period." Pl.'s Opp'n at 6 (quoting <u>Downing</u>, 50 Mass.
App. Ct. at 782). Christensen argues that in <u>Downing</u> the
Massachusetts Appeals Court stated that "a principal under a one-
year, or even a three-year, contract is guaranteed protection in
the event of dismissal only when a superintendent seeks to
terminate the employment relationship prior to the expiration of
the contractual period." <u>Downing</u>, 50 Mass. App. Ct at 782. This
analysis is incomplete.

    <u>Downing</u> is entirely distinguishable. It is true that
<u>Downing</u> distinguishes between the dismissal of a principal and
the failure to renew a principal's contract. The court
differentiated the two, stating that a school system only needs
to have good cause when dismissing a principal and not when
deciding whether to renew a principal's contract. "To hold
otherwise would grant principals de facto tenure. . ." <u>Downing</u>,
50 Mass. App. Ct. at 782. The section 41 statutory "safeguards"
granting school principals "insulation against dismissal except
for 'good cause' . . . do not apply should a contract simply
expire." <u>Downing</u>, 50 Mass. App. Ct. at 782.

    Downing began as a teacher, was later granted tenure, and
subsequently became a principal. <u>Id.</u> at 780. "By the end of the
school year in June, 1995, Mr. Downing had served for more than

three years as the school's principal." Downing v. City of
Lowell, No. 95-3812, 1996 WL 775399, at *1 (Mass. Super. Ct. Nov.
20, 1996) (Hely, J.), aff'd 50 Mass. App. Ct. 779 (2001). As
Downing had served for more than three years, he was entitled the
safeguards insulating school principals against dismissal except
for good cause that are afforded him by section 41 of the
Massachusetts statute. See id. at 782. Christensen is not so
entitled. Her argument is without merit.

Christensen correctly cites Justice Powell's concurring
opinion in Regents of Univ. of Michigan v. Ewing, in which he
wrote that "property interests are protected by procedural due
process," which "interest is derived from state law." 474 U.S.
214, 229 (1985) (Powell, J. concurring). Unlike the statute in
Loudermill, the Massachusetts statute, Mass. Gen. Laws ch. 71,
sections 41-42, does not grant Christensen good cause protection
nor does it create such a property interest. Though certain
language of the Massachusetts statute may, arguably, be
tenebrous, the statute explicitly provides that only those
principals who have worked for a district for three consecutive
years are afforded statutory "good cause" protection. See
Loudermill, 470 U.S. at 548 (Marshall, J. concurring) (noting
that "public employees who may be discharged only for cause are
entitled" due process protections and explaining the importance
of affording such employees the opportunity to present and

challenge evidence and witnesses when evidentiary questions
exist) (emphasis added).

Further, the courts in <u>Downing</u> and <u>Smith</u> have established
that even a principal with both good cause protection and
"serving under contract does not have a constitutionally
protected property right in his employment." <u>Downing</u>, 50 Mass.
App. Ct. at 784-785 (citing <u>Smith</u>, 409 Mass. at 549).[4] If this

---

[4] Though Christensen had a binding employment contract,
absent statutory "good cause" protections it is this Court's view
that this matter falls somewhere between <u>Fontana</u>, 34 Mass. App.
Ct. at 65 ("[A] provisional employee does not have a statutory
basis for claiming a property interest in continued employment .
. ."), and <u>Downing</u> (holding a tenured principal did not have a
property interest). The courts in <u>Fontana</u> and <u>Downing</u> both held,
respectively, that no protectable property interest existed.
This Court is likewise convinced that Christensen, who falls
somewhere in the middle of the <u>Fontana</u>-<u>Downing</u> continuum, does
not possess a protectable property interest.

Though Christensen has an employment contract with Kingston,
because she is not afforded statutory "good cause" protection her
status bears greater resemblance to that of an at-will employee
than that of a tenured principal. For a kindred viewpoint, see
<u>Marlborough Sch. Comm.</u> v. <u>Morley</u>, No. 95-6633, 1996 WL 1186877
(Mass. Super. Ct. Oct 11, 1996) (McHugh, J.) (unpublished
opinion), where the court stated:

> Here, the Legislature's manifest objective was [the] creation of
> a managerial system designed to produce public schools capable of
> delivering high quality education to all who attend. An important
> component of any effective managerial system is the power to
> control direct subordinates. It would be completely inconsistent
> with that kind of a management plan for the Legislature to have
> inserted in a key supervisory role people who had broad
> responsibility for policy but who could be removed only for
> "misconduct which adversely affects the public interest by
> impairing the efficiency of the public service." Far more
> consistent is a management scheme under which <u>principals are the
> equivalent of at-will employees for the first three years of
> their employment</u> and <u>thereafter are protected against discharge
> for arbitrary or irrational reasons</u>. That kind of plan is one
> that protects key employees from irrational whimsy but gives

is so for a principal under contract who has served for three consecutive years, as in <u>Downing</u>, it is indubitably so for a principal who has served less than three years.  Though Christensen claims it is "pellucidly clear" that she "has pled a protectable property interest in her continued employment," this Court disagrees.

Here, the statute does not create a property right, nor does the situation "possess a significant resemblance to those interests previously viewed as fundamental by the Constitution." <u>Coyne</u>, 770 F. Supp. at 747; <u>see also</u>, <u>Michael H.</u> v. <u>Gerald D.</u>, 491 U.S. 110 (1989) (enunciating that a "'liberty' interest is one so deeply imbedded within society's traditions as to be a fundamental right").  Though this Court certainly concurs with the Supreme Court's articulation of the indispensable importance of security in employment, it is the holding of this Court that Christensen does not have a protected property interest.  For this reason, this Court holds that Christensen's federal, and likewise state, procedural and substantive due process and 42 U.S.C. section 1983 claims are without merit and grants

---

their superiors the flexibility they need to manage in a way for which they can be held responsible.  <u>That, in my opinion, is the plan the Legislature in fact created when it inserted the "good cause" standard in [section] 41.</u>

<u>Id.</u> at *7 (emphasis added).  This explanation by Justice McHugh of the Massachusetts Superior Court is in harmony with this Court's reading of the statute.

Kingston's Motion to Dismiss these claims.

### 2.  Alternative Analysis of Federal and State Claims

Christensen's "federal constitutional claim[s] depend . . . on [Christensen] having had a property right in continued employment," Loudermill, 470 U.S. at 538, and, to reiterate, it is the holding of this Court that Christensen does not have such a protected property interest in her position.  As an alternative ground of decision, however, this Court will review the merits of Christensen's federal claims.  See Liability Investigative Fund Effort, Inc. v. Massachusetts Med. Prof. Ins. Assoc., 418 Mass. 436, 443-444 (noting that plaintiffs claiming violations of procedural due process rights "must show first that the property interest that they claim was one to which they had an entitlement.  Only if the plaintiffs make such a showing do we need to consider whether the procedures used meet the requirements of due process." (citations omitted)).  This Court rules that even if Christensen had a property interest, her procedural and substantive due process claims and her 42 U.S.C. section 1983 claim nevertheless fail.

### a.  Federal and State Procedural Due Process Claims

Christensen argues that both the termination and the absence of an adequate hearing violated her due process rights.  Pl.'s Compl. at 4 ¶¶ 23-26, 5 ¶ 27.  She disputes whether she was given adequate notice and contends she should have been granted pre-

and post-termination hearings.  Pl.'s Opp'n at 5; Pl.'s Compl. at
¶¶ 14, 23, 24, 26, 27.  She asserts that, given the Supreme
Court's decision in <u>Vitek</u> v. <u>Jones</u>, 445 U.S. 480 (1980), one
determines "the adequacy of procedures by balancing the
government's interest against the private interest affected by
the action, the risk of erroneous deprivation, and the value of
additional safeguards."  Pl.'s Opp'n at 5 (citing <u>Vitek</u>, 445 U.S.
at 491).  Christensen further claims that the Supreme Court in
<u>Loudermill</u> put "great emphasis on a state depriving an individual
of her livelihood."  Pl.'s Opp'n at 5 (citing <u>Loudermill</u>, 470
U.S. 532).

Central to the determination of Christensen's procedural due
process claims is section 41 of Chapter 71 of the Massachusetts
General Laws, which provides in pertinent part that:

> School principals, by whatever title their position may be
> known, shall not be represented in collective bargaining, but
> <u>every principal shall have the opportunity to meet and discuss
> individually the terms and conditions of his employment in his
> school district</u> with such district's superintendent and may be
> represented by an attorney or other representative, and <u>shall be
> employed under written contracts of employment.</u>  Such contracts
> shall be for <u>terms of up to three years in length</u> . . .
>
> A <u>principal</u> . . . <u>who has served in that position in the public
> schools of the district</u> for <u>three consecutive years shall not be
> dismissed or demoted except for good cause</u>.  Only a
> superintendent may dismiss a principal.  A <u>principal</u> . . . <u>shall
> not be dismissed unless he has been furnished with a written
> notice of intent to dismiss</u> with an explanation of the grounds
> for the dismissal, <u>and, if he so requests</u>, has been <u>given a
> reasonable opportunity within fifteen days after receiving such
> notice to review the decision with the superintendent</u> at which
> meeting such employee may be represented by an attorney or other
> representative to present information pertaining to the bases
> for the decision and to such employee's status.  A principal . .
> . <u>may seek review of a dismissal or demotion decision by filing</u>

16

<u>a petition with the commissioner for arbitration.</u>

Mass. Gen. Laws ch. 71, § 41 (emphasis added).

The outcome here turns in large part on the meaning of the "three consecutive years" language found only in the first sentence of the second quoted paragraph of section 41 of the statute.  Mass. Gen. Laws ch. 71, § 41, i.e., "A <u>principal</u>, assistant principal, department head or other supervisor who has served in that position in the public schools of the district for <u>three consecutive years</u> shall not be dismissed or demoted <u>except for good cause</u>."  (emphasis added).  Relatively few courts have interpreted section 41.  <u>Downing</u>, 50 Mass. App. Ct. at 779 (examining whether the hearing and arbitration provisions of section 41 apply when a school district fails to renew a principal's contract); <u>Apostolides</u> v. <u>Buckley</u>, 7 Mass. L. Rep. 58, No. 95-2398, 1997 WL 338932 (Mass. Super. Ct. June 12, 1997) (Welch, J.) (examining the collective bargaining provisions, but not the hearing and arbitration provisions, of section 41).  Courts have not yet had occasion to address the applicability of the arbitration and hearing provisions of section 41 to a principal who has served for less than "three consecutive years."

Christensen argues that the "three consecutive years" language applies to the entire quoted paragraph of section 41.  Therefore, Christensen argues that the hearing and arbitration provisions of section 41 do not apply to her as she had not been

employed by Kingston for three consecutive years at the time of termination, and are, in consequence, procedurally defective. Pl's Opp'n at 4. Kingston retorts -- somewhat anomalously in view of its argument that Christensen has no property interest in continued employment -- that the "three consecutive years" language applies only to that sentence in which those words appear and that the remainder of the third paragraph applies generally to the termination of all principals. Defs.' Reply to Pl.'s Opp'n to Defs.' Mot. to Dismiss [Doc. No. 10] ("Def.'s Reply") at 1, 5.

During oral arguments, Christensen's attorney asserted that counsel had "appealed to the [Massachusetts Department of Education] consistently on behalf of principals" and that the Massachusetts Department of Education has repeatedly taken the position that the "three consecutive years" language applies to the entire third paragraph of section 41. Tr. of Mot. Hr'g of Nov. 16, 2004 ("Tr.") at 3 (asserting "they send us letters like the one I have in front of me that says if you don't have three years . . . [the hearing and arbitration provisions of the paragraph] are inapplicable to you."). In response to this Court's Order of November 24, 2004 [Doc. No. 11] requesting that Christensen provide this Court copies of the letters to which reference was made during oral argument, Christensen's counsel produced two letters in two unrelated matters written by the

18

Commonwealth of Massachusetts Department of Education.

In the first letter, dated September 23, 1996, Robert V. Antonucci, the then Commissioner of Education ("Antonucci"), indicated the view of the Massachusetts Department of Education by stating, "[m]y interpretation of that paragraph is that the phrase 'three consecutive years' of service in the position applies throughout the paragraph." In the second letter, dated June 10, 2002 (only the first page was submitted to this Court), David P. Driscoll, Commissioner of Education ("Driscoll"), again indicates that because the principal "had not served in the position of principal . . . for three consecutive years, he is not eligible for statutory arbitration."

It is clear that the Massachusetts Commissioner of Education is charged with interpreting chapter 41. See, e.g. the Commissioner's Update dated November 16, 1994, to which Commissioner Antonucci attached an "Advisory on School Governance" including a section entitled "Discipline and Dismissal;" Charter Schools Technical Advisory 03-1: Horace Mann Charter Schools, available at http://www.doe.mass.edu/charter/tech_advisory/03_1.html ("Advisory 03-1") at 6 (answering the questions "[w]ho employs the . . . principal . . . of a Horace Mann charter school?" and "[w]ho has authority over . . . dismissal of staff at a Horace Mann charter school?," Commissioner Driscoll, including

Technical Advisory 98-2 in Advisory 03-1, by responding that
"[t]he charter school statute . . . provides that [chapter] 71,
[sections] 41 and 42 will apply to Horace Mann charter schools .
. . . With respect to dismissal, [section] 41 states, '[o]nly a
superintendent may dismiss a principal.'").  The Commissioner's
interpretation is, therefore, entitled to some deference from
this Court.[5]  Franklin W. Olin Coll. of Eng'g v. Department of
Telecomm. and Energy, 439 Mass. 857, 862 (2003) ("We afford
substantial deference to an agency's interpretation of a statute
that it is charged with administering."); Leopoldstadt, Inc. v.
Commissioner of Div. of Health Care Fin., 436 Mass. 80, 91 (2002)
("In general, we grant substantial deference to an interpretation
of a statute by the administrative agency charged with its
administration."); Amherst-Pelham Reg'l Sch. Comm. v. Department
of Educ., 376 Mass. 480, 491 (1978) ("[W]hile an administrative
or executive interpretation cannot bind the courts, weight should

_____

[5] See Morley, 1996 WL 1186877 (unpublished opinion)
(involving a high school principal who served in that position
for approximately twelve years).  The court in Morley held:

   Only a superintendent is permitted to dismiss or to demote a
   principal.  As a prerequisite to dismissal, however, the
   superintendent must furnish the principal with a written notice
   of intent to dismiss with an explanation of the grounds for the
   dismissal, and, if [the principal] so requests . . . a reasonable
   opportunity . . . to review the [dismissal] decision with the
   superintendent . . . .  The amended statute also provides that a
   principal . . . who has served in that position in the public
   schools of the district for three consecutive years shall not be
   dismissed or demoted except for good cause.

Id. at *4 (alterations in original) (emphasis added).

be given 'to any reasonable construction of a regulatory statute adopted by the agency charged with . . . (its) enforcement.'" (citing <u>School Comm. of Springfield</u> v. <u>Board of Educ.</u>, 362 Mass. 417, 441 n.22 (1972))).

Christensen argues that in a determination of due process, this Court should consider "what process was due and whether, if given, it was constitutionally adequate."  Pl.'s Opp'n at 4. "The fundamental requisite of due process is an opportunity to be heard at a meaningful time and in a meaningful manner."  <u>Matter of Kenney</u>, 399 Mass. 431, 435 (1987).  Even if Christensen, as a principal for less than three years, did not have a statutory right to hearing and arbitration – a point this Court need not definitively decide – Christensen's recourse here is grounded in the statutorily provided right to contract with Kingston. Christensen had "the opportunity to meet and discuss individually" her contract terms, was "employed under written contract," and the contract was for a term "up to three years in length."  Further, in compliance with the statute, Kingston provided Christensen adequate written notice in mid-May of the intent to dismiss effective the end of June.  The statute explicitly provides that, upon receiving such notice, "<u>if [the principal] so requests</u>" the principal is entitled to a review of such request with the superintendent accompanied by an attorney or others.  <u>Loudermill</u>, 470 U.S. at 533 (holding that the

21

"essential requirements of due process are notice and an opportunity to respond"); Mass. Gen. Laws ch. 71, § 41 ¶ 3 (emphasis added).

Though this Court understands the adverse effect of Christensen's misreading of the statute, Christensen cannot now claim a violation of procedural due process when she did not avail herself of the statutory protections it provides. Roslindale Coop. Bank v. Greenwald, 638 F.2d 258, 261 (1st Cir. 1981) ("We cannot be sympathetic to a party who elects to forego the hearing provided him, and then complains he received none . . . . Since a sufficiently timely [review] was available . . . [appellants] cannot bootstrap themselves into the federal court by failing to seek it."). Christensen's procedural due process claim is without merit.

   b.  **Federal and State Substantive Due Process Claims**

Again, even were this Court to assume that Christensen has a protected property interest, not all property interests are afforded substantive due process protections.[6] Coyne, 770 F.

---

[6] "The Supreme Court has enunciated two alternative tests by which substantive due process is examined.  Under the first theory, it is not required that the plaintiffs prove a violation of a specific liberty or property interest; however, the state's conduct must be such that it 'shocks the conscience.'"  Coyne, 770 F. Supp. at 746 n.13 and, Pittsley v. Warish, 927 F.2d 3, 6 (1st Cir. 1991) (quoting Rochin v. California, 342 U.S. 165, 172, 173 (1952) and indicating that "the activities complained of must do more than offend some fastidious squeamishness or private sentimentalism"). Kingston's actions do not rise to this level.

Supp. at 746-47 (quoting <u>Roth</u>, 408 U.S. at 577, for the proposition that "[e]ven if one assumes the existence of a property right . . . not every such right is entitled to the protection of substantive due process."). "While property interests are protected by procedural due process even though the interest is derived from state law rather than the Constitution, . . . substantive due process rights are created only by the Constitution." <u>Ewing</u>, 474 U.S. at 229 (Powell, J. concurring).

Further, only fundamental liberties traditionally protected by society are safeguarded by the substantive due process clause. <u>Michael H.</u>, 491 U.S. at 122 (noting that due process only protects those liberties that are "so rooted in the traditions and conscience of our people as to be ranked as fundamental"); <u>Harrah Indep. Sch. Dist.</u> v. <u>Martin</u>, 440 U.S. 194, 198 (1979) (noting the "Fourteenth Amendment's protection of the 'substantive aspects' of 'life, liberty, and property'" ); <u>Coyne</u>, 770 F. Supp. at 747-748 (holding an interest in a promotion did "not possess a significant resemblance to those interests previously viewed as fundamental by the Constitution").

As Magistrate Judge Cohen stated in <u>Coyne</u>, "[v]iolations of

_____

"To succeed under the second theory, a plaintiff must demonstrate a violation of an identified liberty or property interest protected by the due process clause." <u>Coyne</u>, 770 F. Supp. at 746 n.13 and <u>Pittsley</u>, 927 F.2d at 6 (citing <u>Meyer</u> v. <u>Nebraska</u>, 262 U.S. 390, 399 (1923)). This is the theory presently before this Court.

state statutes and contracts do[] not offend substantive due process." Coyne, 770 F. Supp. at 749. The First Circuit confirmed this conclusion, stating that "[i]t is bedrock law in this circuit . . . that violations of state law -- even where arbitrary, capricious, or undertaken in bad faith -- do not, without more, give rise to a denial of substantive due process under the U.S. Constitution." Coyne, 972 F.2d at 444. The First Circuit has also stated in Jimenez v. Almodovar, in the substantive due process context, that a "mere breach of contractual right is not a deprivation of property without constitutional due process of law. Otherwise, virtually every controversy involving an alleged breach of contract by a government or governmental institution or agency or instrumentality would be a constitutional case." 650 F.2d 363, 370 (1st Cir. 1981) (internal citation and footnote omitted).

"To state a cause of action under the substantive due process component of the Fourteenth Amendment, one must show either that a specific liberty or property interest protected by the federal due process clause has been violated or that the state's conduct 'shocks the conscience.'" Coyne, 972 F.2d at 443 (citations omitted); Meyer v. Nebraska, 262 U.S. 390, 399 (1923). Any "property interest asserted by [Christensen] . . . is, at bottom, a right weaved from the cloth of state law. It does not possess a significant resemblance to those interests previously

24

viewed as fundamental by the Constitution." <u>Coyne</u>, 770 F. Supp. at 747. Christensen's claim of a violation of her rights of substantive due process is without merit.

3.   **Christensen's Claim Under 42 U.S.C. § 1983**

The section 1983 claim[7] appears ancillary to the other claims and is not addressed at great length by either party. In <u>Pittsley</u>, the First Circuit stated that "to prevail in an action brought under 42 U.S.C. [section] 1983, a plaintiff must show that he or she was deprived of a right, immunity, or privilege secured by the constitution or laws of the United States by a person acting under color of state law." 927 F.2d at 6 (citing <u>Parratt</u> v. <u>Taylor</u>, 451 U.S. 527, 535 (1981)); 42 U.S.C. § 1983. Christensen contends that Kingston has "not merely breached the contract" but has "eschewed the bare minimum requirements of due process." Pl.'s Opp'n at 7. This claim lacks merit. Christensen did not have a protected property interest, <u>Pittsley</u>, 927 F.2d at 6, and since Kingston did not violate her procedural or substantive due process rights, Christensen's section 1983

---

[7]Section 1983 provides that:
[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any <u>rights</u>, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .
42 U.S.C. § 1983 (emphasis added)

claim fails.

C. **Christensen's Breach of Contract Claim**

Christensen argues that the parties had entered a binding agreement which Kingston breached because the contract did not provide that Kingston could terminate Christensen "due to reorganization" or "due to fiscal constraints." Pl.'s Compl. at 4 ¶¶ 20-21, 5 ¶ 28. Kingston counters that the contract is unenforceable for reasons of public policy. Kingston asserts that the reasoning of <u>Boston Teachers Union, Local 66</u> v. <u>School Comm. of Boston</u>, 386 Mass. 197 (1982) (involving a collective bargaining agreement with teachers and nurses in the public education setting), applies here.

In <u>Boston Teachers</u>, the Supreme Judicial Court of Massachusetts decided that a job security clause binding a committee to employ a teacher for a period of time greater than one year was unenforceable due to the limitations it places on the committee's ability to make managerial decisions. 386 Mass. at 213; Defs.' Mem. at 10. The court held that "[i]n the context of public education . . . specific appointment determinations, and decisions to abolish positions are within the exclusive managerial prerogative of a school committee." <u>Boston Teachers</u> 386 Mass. at 211.

<u>Boston Teachers</u>, however, is readily distinguishable.

26

Boston Teachers involved teachers and nurses who were afforded

the right to collective bargaining.  In the case of principals,

however, section 41 of the statute explicitly provides that,

> [s]chool principals . . . shall not be represented in
> collective bargaining, but every principal shall have the
> opportunity to meet and discuss individually the terms and
> conditions of his employment in his school district with
> such districts's superintendent and may be represented by an
> attorney or other representative, and shall be employed
> under written contracts of employment.  Such contracts shall
> be for terms of up to three years in length.

Mass. Gen. Laws ch. 71, § 41, ¶ 2 (emphasis added).

Here, the Massachusetts statute explicitly provides that,

unlike in Boston Teachers which involved managerial decisions in

the context of collective bargaining, individual contracts up to

three years in duration[8] are allowed.  Kingston's attempts to

conjure up a public policy to nullify the contract are

unavailing.  Here, a valid contract apparently existed and

---

[8] Kingston argues that to allow contracts up to three years
in duration takes away the explicit statutory authority of a
superintendent to dismiss a principal.  Kingston asserts that "if
. . . the superintendent has the authority to dismiss a principal
[under section 41], then the contract entered between the
principal and the School Committee cannot be construed to
effectively abrogate that authority."  Defs.' Reply, at 11.
    This argument is puzzling.  First, the statute explicitly
contemplates and allows such a contract.  Second, and even more
perplexing, Kingston knowingly entered into a three-year contract
with Christensen when it was free to enter into a contract of
lesser duration.  Defs.' Reply, at 11.  Finally, the statute
makes explicitly clear that a superintendent can fire a principal
for good cause at any time (although a principal with more than
three years tenure has the added procedural protection of review
by way of arbitration).  Mass. Gen. Laws ch. 71, § 41 ¶ 2.

Christensen's breach of contract claim survives Kingston's Motion to Dismiss.

Just as Christensen could have bargained for contractual provisions to protect her interests, nothing precluded Kingston from negotiating a contract for a shorter term or from including provisions to protect and retain its managerial authority to make fiscal and other decisions. Were Kingston free simply to void the contract and terminate Christensen's employment, it would effectively circumvent the express language of the statute, Mass. Gen. Laws ch. 71, § 41 ¶ 2 (allowing principals to negotiate individual contracts and allowing contracts up to three years in duration), and render Christensen an employee-at-will. Kingston was free to negotiate the length of the agreement and terms sufficient to retain its managerial authority. It must bear the consequences of its failure to do so.

Since Christensen's employment contract is not on the record before this Court in this motion to dismiss, it does no more than rule that Christensen's breach of contract claim is sufficient to withstand Kingston's Motion to Dismiss, thus warranting further review of the employment contract, its termination provisions, and the intent of the contracting parties.

D.    **Christensen's Claim for a Breach of the Implied Covenant of Good Faith and Fair Dealing**

The implied covenant of good faith and fair dealing is

28

viewed by some "an indispensable measure of contractual

morality," Tory A. Weigand, The Duty of Good Faith and Fair

Dealing in Commercial Contracts in Massachusetts, 88 Mass. L.

Rev. 174 (2004) (internal quotations and citations omitted), and

by others as a "chameleon." Id. (quoting Empire Gas Corp. v.

American Bakeries Co., 840 F.2d 1333, 1339 (7th Cir. 1988)).[9]

"Courts have often applied this rule to prevent overreaching by

employers and the forfeiture by employees of benefits almost

earned by the rendering of substantial services." Fortune v.

National Cash Register Co., 373 Mass. 96, 105 (1977).

In order to demonstrate a claim for the breach of the

covenant of good faith and fair dealing, "the plaintiff must show

that there existed an enforceable contract between the two

parties." Learning Express, Inc. v. Ray-Matt Enters., Inc., 74

F. Supp. 2d 79, 84 (1999) (quoting Laser Labs, Inc., v. ETL

Testing Lab., Inc., 29 F. Supp. 2d 21, 24 (D. Mass. 1998)

(O'Toole, J.)); Moore v. Marty Gilman, Inc., 965 F. Supp. 203,

222 n.16 (D. Mass. 1996) (Karol, M.J.) ("A contract is a

necessary element of . . . a claim of a breach of the implied

covenant of good faith and fair dealing." (citation omitted)).

Though applicable to at-will employment relationships,

---

[9] For a comprehensive historical and legal overview of the
implied covenant of good faith and fair dealing in Massachusetts,
see Weigand, 88 Mass. L. Rev. at 174-196.

<u>Fortune</u>, 373 Mass. at 104, the covenant arises naturally out of formal contractual relationships as well.  "Every contract is subject to an implied covenant of good faith and fair dealing." <u>Anthony's Pier Four, Inc.</u> v. <u>HBC Assocs.</u>, 411 Mass. 451, 473 (1991) (noting that the "rule is clear in Massachusetts"); Pl.'s Opp'n at 12.  "[T]he obligation [is] to preserve the spirit of the bargain rather than the form," and "[i]t is moreover a group of specific rules which evolved to insure that the basic purpose of contract law is carried out, the protection of reasonable expectations of parties induced by promise." <u>See</u> Corbin on Contracts, § 654A(A), Kaufman supp. (1984).  Here, Christensen argues that the implied covenant of good faith and fair dealing provides that "neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." <u>Uproar Co.</u> v. <u>National Broad. Co.</u>, 81 F.2d 373, 377 (1st Cir. 1936) (noting "that in every contract there exists an implied covenant of good faith and fair dealing");  <u>Anthony's Pier Four</u>, 411 Mass. at 471, 473 (same); Pl.'s Opp'n at 12.

It is important not to read too much into the words just quoted, however, since, while every breach of contract has the "effect of destroying or injuring the rights of the other party to receive [its] fruits," not every breach of contract is a breach of the implied covenant of good faith and fair dealing.

As the law has developed, recovery under the latter theory requires conduct taken in bad faith either to deprive a party of the fruits of labor already substantially earned or unfair leveraging of the contract terms to secure undue economic advantage.  <u>Id.</u> at 471.

<u>Anthony's Pier Four</u> developed the second approach to the implied covenant.  Anthony's was attempting to get out of a "lousy deal" and wanted more money.  411 Mass. at 472.  Anthony's withheld needed approvals to apply pressure on the other party to the contract.  <u>Id.</u>  Courts have agreed that the question of breach is a matter of degree.  Harms suffered in a breach of the implied covenant of good faith and fair dealing generally involve deceit or "unfair subterfuge" and usually are "compounded by deceptive or unfair behavior that prevented -- or at a minimum diverted -- the injured parties from seeking immediate redress." <u>Boston Pilots</u> v. <u>Motor Vessel Midnight Gambler and E. Coast Excursions, Inc.</u>, 357 F.3d 129, 135 (1st Cir. 2004).

In this instance, Christensen has not alleged that Kingston fired her in bad faith or for any reason other than the budgetary and fiscal constraints stated by it.  <u>Piantes</u> v. <u>Pepperidge Farm, Inc.</u>, 875 F. Supp. 929, 938 (D. Mass. 1995) (Gertner, J.) ("A mere finding that there was no 'good' reason for the termination in the absence of other indicia of lack of honesty or taking unfair advantage; or bad faith, is insufficient to support a

claim . . . . [T]he absence of good cause is not the equivalent
of absence of good faith."); Equipment & Sys. for Indus., Inc. v.
Northmeadows Constr. Co., Inc., 59 Mass. App. Ct. 931, 932 (2003)
("[T]here is nothing in the complaint from which one might draw
the reasonable inference that . . . [Kingston's actions were]
done in bad faith . . . [nor to] permit an inference of a breach
of an implied contract of good faith and fair dealing,
implicating a dishonest purpose, consciousness of wrong, or ill
will. . .").

Nor has Christensen alleged that Kingston had an "improper
motive," Fortune, 373 Mass. at 101 (explaining, in an at-will
employment context, that "[i]t is clear that the contract itself
reserved to the parties an explicit power to terminate the
contract without cause on written notice . . . [Yet a] written
contract contains an implied covenant of good faith and fair
dealing, and a termination not made in good faith constitutes a
breach of the contract."); Gram v. Liberty Mut. Ins. Co., 384
Mass. 659 (1981) ("Gram I"), or that its behavior was "pretextual
or coercive."  Christensen simply has not alleged "that
[Kingston]'s actions were motivated by a desire to destroy or
injure [Christensen]'s right to receive the fruits of the . . .
agreement." Piantes, 875 F. Supp. at 938 (citing Anthony's Pier
Four, 411 Mass. at 471-472).

The parties refer to Fortune, which involved a commercial,

at-will situation[10] in which it was held that an employer was accountable to a terminated employee for already-earned, unpaid compensation if such employee was terminated in bad faith _and_ the compensation was connected to work already performed.  373 Mass. 96.  The implied covenant of good faith and fair dealing there was applied to address compensation for past services.  _Devlin_ v. _WSI Corp._, 833 F. Supp. 69, 77 (D. Mass. 1993) (articulating, in an at-will employee context, that "[t]he holding in _Fortune_ . . . requires something more than bad faith.  The employer must seek to deprive the . . . employee of money 'fairly earned and legitimately expected.'") (citations omitted); _Fortune_, 373 Mass. at 105 ("Courts have often applied this rule to prevent overreaching by employers and the forfeiture by employees of benefits almost earned by the rendering of substantial services.").  Further, in _Gram I_, 384 Mass. at 671, an employer was held liable by the Supreme Judicial Court for breach of the implied covenant of good faith and fair dealing where it did not pay employee commissions the employee had earned prior to termination but which were not yet due.

Christensen, however, does not allege that she is due compensation for past services.  Def.'s Mem. at 3 ¶ 9.  Rather, Christensen seeks redress for the remainder of the contract.

---

[10] For this Court's explanation of why parallels may be drawn between Christensen and an at-will employee, _see_ _supra_ n.4.

"Contract damages are ordinarily based on the injured party's expectation interest and are intended to give him the benefit of his bargain by awarding him a sum of money that will, to the extent possible, put him in as good a position as he would have been in had the contract been performed." Restatement (Second) of Contracts § 347 cmt. a; VMark Software v. EMC Corp., 37 Mass. App. Ct. 610, 611 n.2, 625 (1994) (noting "that the wronged party should . . . be placed in the same position as if the contract had been performed.") (citing John Hetherington & Sons, Ltd. v. William Firth Co., 210 Mass. 8, 21 (1911) ("The fundamental principle of law upon which damages for breach of contract are assessed is that the injured party shall be placed in the same position he would have been in, if the contract had been performed, so far as loss can be ascertained to have followed as a natural consequence and to have been within the contemplation of reasonable men as a probable result of the breach, and so far as compensation therefor in money can be computed by rational methods upon a firm basis of facts.")).

Full contract damages are not, however, necessarily the measure of damages for breach of the implied covenant of good faith and fair dealing, concerned as it is with Kingston's "duty of good faith and fair dealing in carrying out the terms of its agreement regarding" past services. Devlin, 833 F. Supp. at 78 (noting, in a matter involving a claim of wrongful discharge,

34

that a termination "that is contrived to despoil an employee of earned commissions or similar compensation due for past services will qualify under <u>Fortune</u>."); <u>Gram</u> v. <u>Liberty Mut. Ins. Co.</u>, 391 Mass. 333, 338 (1984) ("<u>Gram II</u>") (emphasizing its holding in <u>Gram I</u>, 384 Mass. at 672, that "the obligation of good faith and fair dealing imposed on an employer requires that the employer be liable for the loss of compensation that is so clearly related to an employee[ at will]'s past service, when the employee is discharged without good cause"); <u>Tufankjian</u> v. <u>Rockland Trust Co.</u>, 57 Mass. App. Ct. 173, 177 (2003) (holding that the bank's attempts to "sweeten the deal" and to recapture forgone contract opportunities justified a finding of a breach of the covenant).

Christensen here seeks compensation for the remainder of the contract. In <u>Gram I</u>, the plaintiff "was entitled to recover identifiable, reasonably anticipated future compensation, based on his <u>past</u> services, that he lost because of his discharge without cause." <u>Gram II</u>, 391 Mass. at 333 (emphasis added) (reiterating its holding in <u>Gram I</u>, 384 Mass. 659 (1981)). In this instance, the damages Christensen seeks are based not on past services but on the remaining term of the contract. <u>Cf.</u> <u>Showstead</u> v. <u>Holzman</u>, No. 031561, 2004 WL 1109820, at *2 (Mass. Super. Ct. April 7, 2004) (Hely, J.) ("In this case, the facts pleaded by [Christensen] show[, if anything,] a straightforward breach of contract action based on a default by the [Committee

and Noseworthy] on or before the [contract termination] date . .

. . [Christensen] cannot circumvent this by calling his breach of

contract action by a different name."). Kingston made a

managerial decision when it eliminated Christensen's position

and, while her termination may amount to a breach of its contract

with her, it does not amount to a breach of the implied covenant

of good faith and fair dealing.

Courts should not view the covenant as "an unwarranted

invitation . . . to impermissibly intrude into freedom of

contract." Weigand at 174-175 (quoting E. Allan Farnsworth, <u>Good

Faith Performance and Commercial Reasonableness Under the Uniform

Commercial Code</u>, 30 U. Chi. L. Rev. 666, 669-670 (1962)). Nor

should claims of a breach of the implied covenant of good faith

and fair dealing become automatic bedfellows of breach of

contract claims. It has become common practice by plaintiffs

bringing breach of contact claims automatically to pursue claims

for breach of the covenant of good faith and fair dealing.

Often, these claims are frivolous, baseless, and perfunctory, and

become unjustifiably entangled in legitimate breach of contract

claims. Conceptually, claims for breach of the implied covenant

of good faith and fair dealing are distinct from simple breach of

contract claims and require additional factual allegations of

unfairly leveraging the contract terms for undue economic

advantage.

Parties to a contract in Massachusetts still have the traditional choice: perform on the contract in good faith or withhold performance and become liable to the other for contract damages. See Weigand at 184 (noting that "parties to an arm's length . . . transaction can act in their own self-interest so long as they honor their contractual obligations"). Such redress is appropriate in a breach of contract claim. No claim for breaching an implied covenant of good faith and fair dealing need be pled unless the factual circumstances actually warrant the additional claim.[11]

---

[11] The Court has thoroughly analyzed the similarities and differences under the law of Massachusetts between a contract claim and a claim for the breach of the covenant of good faith and fair dealing. Notwithstanding Salve Regina Coll. v. Russell, 499 U.S. 225, 231-32, 239-40 (1991) (holding that courts of appeals "should review de novo a district court's determination of state law" explaining that this fosters judicial economy and accuracy because while district courts focus time, energy and resources on trial, appellate courts are "structurally suited to the collaborative juridical process that promotes decisional accuracy" by virtue of their primarily focus on questions of law and the benefit of multi-judge panels), recent scholarship suggests this analysis is worth some deference. Jonathan Remy Nash, Resuscitating Deference to Lower Federal Court Judges' Interpretations of State Law, 77 So. Cal. L. Rev. 975 (2004).

## III. CONCLUSION

For the foregoing reasons, this Court rules that (1)
Kingston's motion to dismiss [Doc. No. 6] Christensen's claim for
a violation of federal procedural due process is ALLOWED, (2)
Kingston's motion to dismiss Christensen's claim for a violation
of federal substantive due process is ALLOWED, (3) Kingston's
motion to dismiss Christensen's claim for a violation of 42
U.S.C. section 1983 is ALLOWED, (4) Kingston's motion to dismiss
Christensen's state procedural due process claims is ALLOWED, (5)
Kingston's motion to dismiss Christensen's state substantive due
process claims is ALLOWED, (6) Kingston's motion to dismiss
Christensen's claim for a violation of the covenant of good faith
and fair dealing is ALLOWED, and (7) Kingston's motion to dismiss
Christensen's breach of contract claim is DENIED.

Having gone about as far as it can go, and having dismissed
all of the federal and many of the state claims, this Court
remands Christensen's breach of contract claim to the
Massachusetts Superior Court sitting in and for the County of
Plymouth.

SO ORDERED.

/s/ William G. Young

_____

WILLIAM G. YOUNG
CHIEF JUDGE